UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LINDA ZALINSKIE, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 12-289 |
| v. | : | **OPINION** |
| ROSNER LAW OFFICES, P.C., | : | |
| TERRI ROSNER, | : | |
| Defendants. | | |

This matter comes before the Court on Defendants' motion for summary judgment on Count II of the Complaint pursuant to Fed. R. Civ. P. 56.[1] [Dkt. No. 26.] The Court has considered the written submissions of the parties and the arguments advanced at the hearing on February 6, 2014. For the reasons below, as well as the reasons stated on the record at the hearing, Defendants' motion for summary judgment is denied.

## I. Factual and Procedural Background

Plaintiff Linda Zalinskie ("Zalinskie") claims that she was fired by Defendants Rosner Law Offices, P.C. and Terri Rosner (collectively "Defendants") in retaliation for lodging a complaint with the New Jersey Department of Labor ("NJDOL"), in violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et. seq.* Zalinskie filed a complaint with the NJDOL in September, 2011 regarding the firm's failure to pay overtime wages. Zalinskie was fired on September 29, 2011, six days after Department of Labor Investigator

---

[1] The parties settled Counts I and III of the Complaint which alleged that Defendants' failure to pay overtime wages violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* (Count I) and the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-4.1 *et seq.* (Count III). See Notice of Acceptance of Offer of Judgment, August 21, 2013, Dkt. No. 68.

1

Jim Boisvert visited the Law Office. <u>See</u> Dep. of Terri Rosner, 53:9-18. Defendants claim that they were unaware that Zalinskie filed a complaint with the Department of Labor and that Zalinskie was terminated because of her history of insubordination and poor work performance.

Zalinskie began her employment at Rosner Law Offices, P.C. (herein: "Law Office") under the supervision of attorney Daniel Rosner on January 2, 2006. <u>See</u> Dep. of Plaintiff, 27:1-3. Zalinskie was initially hired as an assistant bookkeeper and worked with Terri Rosner in this capacity. <u>Id.</u> at 27:4-8. The record reflects that there was tension between Zalinskie and Terri Rosner and Stephanie Harris, an office manager at the law firm.

Less than a year before Zalinskie was terminated, the office met to discuss the possibility of layoffs because of the firm's finances. On December 20, 2010, Daniel Rosner, Terri Rosner, and Stephanie Harris met with Zalinskie to discuss her attitude and job performance. Cert. of Deborah Mains, Exhibit B, 5. This discussion also included Zalinskie's statement that she would commit suicide if she was laid off. <u>Id.</u>

Defendants claim that at this time, Daniel Rosner was inclined to terminate Zalinskie for insubordination and performance issues. <u>See</u> Rosner Dep. 29:1-6. However, Plaintiff was not terminated and was reassigned to the Paralegal Department. The parties dispute the import of this move. While Zalinskie claims it was a lateral move offered to her with the prospect of a promotion, Defendants claim that the reassignment was made to alleviate her performance problems. According to Defendants, Zalinskie frequently used profanity, had an inappropriate attitude, and was performing poorly.

Defendants claim that during the meeting informing Zalinskie of the reassignment, Daniel Rosner cautioned Plaintiff that the transfer was her last chance to save her job, because her employment with the Law Office was in jeopardy. See Rosner Dep. 48:5-15. Nonetheless, Zalinskie switched departments in Spring 2011.

Defendants allege that Plaintiff's change in position did not improve her performance or demeanor; for example, Defendants claim that on August 28, 2011 Plaintiff repeatedly used profanity in the workplace. Cert. of Deborah Mains, Exhibit D. Stephanie Harris verbally warned Plaintiff that profanity was not tolerated. Id. On August 30, 2011, Zalinskie met with Mr. Rosner and Ms. Harris to address her continuing performance deficiencies, including her failure to perform follow-up inquiries on her files and timely complete her assignments. See Cert. of Deborah Mains, Exhibit B, 7.

On August 23, 2011, Mr. Rosner held an office-wide meeting to address the Law Office's attendance and tardiness policies. See Plaintiff Ans. To Inter., 6. On August 31, 2011, Zalinskie was tardy because she had doctor's appointment. Id. Plaintiff claims that she sent an email to Ms. Harris that very morning to inform her that she would be late and that she intended to make up the time for the lateness during her lunch break. Zalinskie Dep., 92:10-17. Plaintiff was six minutes late to work. Id. 92:10-17. Because Zalinskie's email did not constitute adequate notice under the Law Office's tardiness policy, Defendants notified her that her pay was going to be docked. (Id., 92:10-17.)

Plaintiff was a salaried employee and was paid bi-weekly. See id., 79:9-20; 80:9-15. Zalinskie generally worked from 9:00 a.m. until 5:00 p.m. and

3

understood that any overtime work was designated as "comp" time. Id. at 68:12-18; 80:9-15. Zalinskie claims that she kept her own accounting of the hours she worked and often did not record time spent working on weekends. Id. at 60:21-24; 61:1-7; 78:10-24. Zalinskie told Defendants that it was illegal to dock her pay. In addition, she informed them that because they never compensate her overtime hours it was unfair that her pay was docked for a six minute instance of lateness. Plaintiff estimates that she accumulated 26,803 minutes in "comp time" as of August, 2011. See Plaintiff Counter Stat. of Mat. Facts, Exhibit H, 2.

Plaintiff claims that she placed telephone calls to the NJDOL after she was informed that Defendants intended to dock her pay. See Zalinskie Dep., 90:2-9 In addition, on September 4, 2011 she filed a written complaint with the NJDOL. See Cert. of Deborah Mains Exhibit N; Zalinskie Ex. H. The written complaint alleges that Zalinskie was owed $8,500 in wages from her accrued "comp time." See Plaintiff Stat. of Mat. Facts, Exhibit H, 2. Zalinskie claims that the NJDOL informed her that Defendants would receive a copy of the written complaint. See Zalinskie Dep., 140:2-4. Plaintiff testifies that she informed at least four co-workers about her written complaint to the NJDOL. Id. at 137:9-24, 138:1-4, 140:16-24, 141:1-10. On September 16, 2011, Plaintiff received a paycheck with a deduction of $4.80 to reflect her six minute tardiness on August 31, 2011. See Plaintiff Stat. of Mat. Facts, Exhibit B, 7.

On September 20, 2011 Zalinskie met with Ms. Harris and Mr. Rosner to discuss Zalinskie's insubordination towards Terri Rosner. See Def. Stat. of Mat. Facts, Exhibit B, 7. Zalinskie claims that during this meeting she informed Harris and Rosner that it was illegal to dock the pay of a salaried employee. See

Dep. of Stephanie Harris, 70:9-24, 71:1-24, 72:1-17.  According to Zalinskie, Mr. Rosner asked her where she obtained her information and she told him "the Department of Labor." See  Zalinskie Dep., 90:19-21.  Mr. Rosner responded that he would look into Plaintiff's allegation to ensure that the Law Office's actions were legal; he stated that he would repay the money if he discovered that docking her pay was inappropriate. See Cert. of Deborah Mains, Exhibit P.

According to Ms. Harris, Plaintiff explained to Mr. Rosner that she calculated that she had twelve weeks of "comp time" and Rosner challenged the computation. See Harris Dep., 73:19-74:1. Mr. Rosner then told Plaintiff that she could leave if she did not want to be there. Id. at 74:11-21.

On September 21, 2011, Ms. Harris met with Plaintiff and asked for proof of Defendants' wage violation. Id. at 68:15-24.  At the request of Mr. Rosner, Ms. Harris also researched Plaintiff's allegation. Id. at 80:21-24, 81:5-8.  Later that same day, Zalinskie claims that Mr. Rosner asked her for the website from which she obtained her information and she again responded that she called the Department of Labor. See Zalinskie Dep., 91:1-10.  According to Ms. Harris, Mr. Rosner told her (Harris) that he decided to terminate Plaintiff. See Harris Dep., 74:21-24, 75:1-8.  Ms. Harris, however, persuaded him to wait and not immediately terminate Zalinskie. Id.

On September 23, 2011, two days after Plaintiff's meetings with Mr. Rosner and Ms. Harris, Department of Labor Investigator Jim Boisvert made an unannounced visit to the Law Office. See T. Rosner Dep., 53:9-18.  Investigator Boisvert advised the Rosners that he was conducting a random audit of the firm and requested certain documents.  Id. at 55:15-19; D. Rosner Dep., 107:11-23.

5

Terri Rosner claims that Investigator Boisvert did not mention that his visit was in response to an employee complaint. T. Rosner Dep., 64:13-22.

On September 27, 2011, Mr. Rosner and Stephanie Harris met with Zalinskie and provided her with a corrected paystub which reflected an itemization of her docked pay. See D. Rosner Dep., 102:10-103:1-3. Mr. Rosner also informed Plaintiff that the disciplinary docking of her pay was lawful. Id. at 95:12-14. Two days later Zalinskie was fired.

Mr. Rosner claims that he made the decision to terminate Plaintiff after considering Plaintiff's various performance deficiencies, some of which resulted in clients missing mandatory appointments, Plaintiff's repeated violations of the firm's email policy, and repeated instances of insubordination. Id. at 104:14-20. Zalinskie testifies that the week leading up to her termination was "horrendous," and that she felt like she was being set up for termination: for example, she claims that Defendants purposely asked her about assignments they knew she did not complete and intentionally gave her assignments that they knew she could not complete without instruction. See Zalinskie Dep., 156:13-157:13.

Defendants maintain that they only learned that Zalinskie had filed a complaint with the NJDOL when, on October 13, 2011, Investigator Boisvert returned to the Law Office to review documents. See D. Rosner Dep., 56:18-22. When Investigator Boisvert learned that Ms. Zalinskie had been terminated, he disclosed that Ms. Zalinskie filed a complaint with the Department of Labor. See Cert. of Deborah Mains, Exhibit B, 9. Investigator Boisvert also disclosed that two or three other anonymous complaints were filed with the Department of Labor regarding the Law Office. Id.

At the request of the NJDOL, Defendants performed a self-audit and discovered that Zalinskie had worked four weeks of overtime in the preceding two years. See Cert. of Deborah Mains, Exhibit S. As a result, Defendants paid Plaintiff $400 and also paid overtime wages to three other employees. Id. Plaintiff filed the Complaint on January 17, 2012.

## II. Standards of Review

### A. Summary Judgment Standard

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### B. The Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*

Under the FLSA, 29 U.S.C. § 201, *et. seq.* it is unlawful to "discharge or in any matter discriminate against an employee because that employee has filed

8

any complaint or instituted or caused to be instituted any proceeding under or related to this chapter..." See 29 U.S.C. § 215(a)(3).  Claims of unlawful retaliation under the FLSA are analyzed using the familiar burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).  See Cononie v. Allegheny General Hosp., 29 Fed.App'x. 94, 95 (3d Cir. 2002); Weston v. Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001).  The first step under McDonnell Douglas requires a plaintiff to establish a prima facie case of retaliation under the FLSA.  McDonnell Douglas, 411 U.S. at 802.  To carry this initial burden in a retaliation case, Zalinskie must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment decision; and (3) the adverse decision was causally related to the protected activity. Conoshenti v. Public Elec. & Gas Co., 364 F.3d 135, 146-47 (3d Cir. 2004).  A causal connection may be established by circumstantial evidence, such as temporal proximity, a pattern of antagonism, and pretext.  Kachmar v. SunGard Data Sys., 109 F.3d 173, 177 (3d Cir. 1997).  This indirect evidence is to "be considered with a careful eye to the specific facts and circumstances encountered."  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279, n.5 (3d Cir. 2000).

      Once a prima facie case is established, the burden of persuasion shifts back to Defendants to put forth "a legitimate, nondiscriminatory reason" for the employment decision. Id.; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).  If Defendants succeed in demonstrating that the decision was based on a non-discriminatory reason, Plaintiff has the burden of proving by a

preponderance of the evidence that the stated reason was pretextual. Burdine, 450 U.S. at 260; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993).

In this regard, the task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal purpose. Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 525-27 (3d Cir. 1992). Thus, to establish pretext, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the . . . plaintiff must demonstrate such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer' did not act for [the asserted] nondiscriminatory reasons." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

### III. Analysis

Defendants seek summary judgment on Plaintiff's claim of retaliation under the FLSA on grounds that Plaintiff fails to carry her burden of demonstrating a prima facie case of discrimination and because Plaintiff cannot show that Defendants' reason for her termination is a pretext for discrimination. For the reasons that follow, the Court finds that there are genuine issues of material fact that preclude summary judgment.

### A. *Prima Facie* Case

Plaintiff satisfies her burden of demonstrating a *prima facie* case of retaliation under the FLSA. She was engaged in activity protected by the FLSA, she was terminated, and the timing of her termination in relation to her protected activity is sufficient to establish a causal connection. See Todaro v. Twp. of Union, 27 F.Supp.2d 517, 540 (D.N.J. 1998) (citing Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989)).

For purposes of the present motion, Defendants do not dispute that Plaintiff was engaged in a protected activity when she filed her written complaint with the NJDOL on September 4, 2011 and Defendants also agree that Plaintiff's termination constitutes an adverse employment action. See Def., Mot., at 6-7. However, Defendants argue that Zalinskie's oral complaint to Daniel Rosner during the September 20, 2011 meeting does not constitute protected activity because it was not sufficiently detailed so as to put the Defendants on notice of a violation of the FLSA. The Court disagrees.

The anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3), is interpreted liberally and protects a wide range of actions. See Brock v. Richardson, 812 F.2d 121, 123 (3d Cir. 1987). Even an employer's mistaken belief that an employee has engaged in protected activity, without more, is sufficient to trigger application of 29 U.S.C. § 215(a)(3). Id. at 124. Moreover, a plaintiff in a retaliation action is not required to show her employer actually violated the FLSA; a plaintiff's good faith belief that her employer is in violation is sufficient. See Saffels v. Rice, 40 F.3d 1546, 1549-50 (8th Cir. 1994). Liberal interpretation of 29 U.S.C. § 215(a)(3) also extends to the nature of the complaint. In this

11

regard, oral complaints, as opposed to written complaints, may constitute protected activity. See Kasten v. Saint-Gobain Performance Plastics Co., 131 S.Ct. 1325, 1335 (2011). An oral complaint constitutes protected activity when it puts an employer on notice of a claim under the FLSA. The oral complaint must be sufficiently clear and detailed so as to demonstrate that the employee is asserting rights protected by the FLSA. Id.

Here, the record demonstrates that Plaintiff made multiple statements to Ms. Harris and Mr. Rosner regarding her allegation that Defendants' action of docking her pay was illegal. See Cert. of Deborah Mains, Exhibit N; Harris Dep., 70:9-24, 71:1-24, 72:1-17. In addition, Zalinskie testifies that she told Mr. Rosner that she obtained information confirming that it was illegal to dock her pay from "the Department of Labor." See Zalinskie Dep., 90:19-21. Defendants dispute that Zalinskie made an oral complaint. Thus, resolution of whether or not Zalinskie made such statements turns on creditability determinations, which are impermissible on summary judgment. See Big Apple BMW, Inc, 974 F.2d at 1363. Viewing the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff's multiple oral statements regarding her allegation that docking her pay was illegal, which Plaintiff made in the presence of and directed to Defendants, are sufficient at this stage to constitute protected activity. An objective person could conclude that Plaintiff's oral complaints put Defendants on notice that she was asserting her rights under the FLSA. Kasten, 131 S. Ct. at 1336.

Next Defendants argue that Plaintiff cannot demonstrate a causal connection between her protected activity and her termination. The Court disagrees.

The timing of Plaintiff's termination is almost contemporaneous with her written complaint to the FLSA, her oral complaints, and Investigator Boisvert's visit to the Law Office and is sufficient, standing alone, to demonstrate prima facie causation. Temporal proximity establishes causation on its own when the adverse action occurs so close to the protected conduct that the timing is "unusually suggestive." See LeBoon v. Lancaster Jewish Cmty Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007); see also Robinson v. Southeastern Pa. Transp. Auth., 982 F.2d 892, 895 (3d Cir. 1993). Zalinskie's termination happened less than a month after she filed a written complaint with the NJDOL, eight days after she told Mr. Rosner at the September 21, 2011 meeting that the source of her wage allegations was the NJDOL, and six days after Investigator Boisvert visited the Law Office. This timeline is sufficient to create a presumption of causation. See Robinson, 982 F.2d at 895; see also St. Cyr v. Brandywine Senior Living, LLC., No. 10-5868, 2012 WL 2344858, *5 (D.N.J. 2012) (temporal proximity of seven days gave rise to a genuine issue of material fact on causation.)

The Court finds that Plaintiff has established a prima facie case of discrimination.

### B. Legitimate Business Reason and Pretext

Defendants satisfy their burden of demonstrating a legitimate non-discriminatory reason for Zalinskie's termination. The evidence in the record demonstrates a history of complaints regarding Plaintiff's poor performance and insubordination. See, e.g., Rosner Cert., Exs. B, M, N, and O. At oral argument, counsel for Plaintiff agreed that the work environment was contentious and that

13

it was not always "smooth sailing."  Although Plaintiff challenges this evidence and claims that her transition from bookkeeper to paralegal was a lateral move which she was pleased to make, Defendants meet their burden under McDonnell Douglas. See Burdine, 450 U.S. at 254 (1981); see also Pollock v. American Tele. & Tele. Long Lines, 794 F.2d 860, 863-64 (3d Cir. 1986) (insubordination, poor performance, and misconduct asserted as legitimate reasons for employee discharge); Bellissimo v. Westinghouse Elec. Corp., 764 F.2d 175, 181 (3d Cir. 1985) (inability to get along with supervisor is legitimate reason for discharge).

The Court finds that there are genuine issues of material fact related to whether Defendants' proffered reasons for Plaintiff's termination are a pretext for discrimination which preclude summary judgment. "[A] plaintiff who has made out a prima facie case may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes, 32 F.3d at 764. Defendants claim that they could have lawfully fired Plaintiff for poor performance and behavior prior to September, 2011. See D. Rosner Dep. 29:1-6 (stating Daniel Rosner was inclined to terminate Zalinskie for insubordination and performance issues in December, 2010).  Yet, the decision to terminate Zalinskie was made after she complained to the NJDOL and complained to Mr. Rosner.  The record demonstrates that Mr. Rosner explicitly mentioned Zalinskie's termination after his meetings with Plaintiff on September 20, and 21, 2011, during which Plaintiff complained to him about her docked pay. See Dep. of Stephanie Harris, 74:21-24, 75:1-8.  The

14

fact that Defendants allege that they could have fired Plaintiff for performance and behavior but chose to fire her after her protected activity, leaves room for "an inference that the employer did not act for its stated reasons." Sempier v Johnson & Higgins, 45 F.3d 724, 731 (3d Cir. 1995) (citing Josey v. John R. Hollinsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)).

Although Defendants argue that they were unaware that Plaintiff filed a written complaint and they dispute that Plaintiff's oral complaints put them on notice, the fact that the NJDOL Investigator visited the office during the relevant time period coupled with Plaintiff's testimony that she informed Defendants of her allegation creates a genuine issue of fact as to Defendants' knowledge of Plaintiff's protected activity. Big Apple BMW, Inc, 974 F.2d at 1363 (credibility determinations are the province of the fact finder).

Moreover, the temporal proximity between Zalinskie's activity and her termination is "unusually suggestive of retaliatory motive." Shellenberger v. Bancorp, Inc., 318 F.3d 184, 189 n. 9 (3d Cir. 2003) (quotation omitted); see also Jalil, 873 F.2d at 708 (two days between the protected activity and adverse employment action supported inference of a causal connection between the two). Despite claims that it had a legitimate basis to do so, Defendants never terminated Plaintiff until after she complained about her wages and filed a complaint with the NJDOL. Thus, this is not a case where the temporal relationship is too attenuated to create a genuine issue of fact. See Farrell, 206 F.3d at 280 (citing Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)). Instead, the relatively short time between Plaintiff's initial written and multiple oral complaints and her termination is "unusually suggestive," and

15

sufficient standing alone to create an inference of causality and defeat summary judgment." LeBoon, 503 F.3d at 233.

## IV. Conclusion

Plaintiff satisfies her burden of demonstrating that genuine issues of material fact exist as to the determination of whether her termination was motivated by discriminatory animus.  As a result, summary judgment is denied. An appropriate Order shall issue.

Dated: March 12, 2014


          _s/ Joseph H. Rodriguez_____
          Hon. Joseph H. Rodriguez,
          United States District Judge